IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 2, 2021

## STATE OF TENNESSEE v. MARTERIOUS O'NEAL

**Appeal from the Criminal Court for Shelby County**
No. 15-05135          Paula L. Skahan, Judge

_____

**No. W2019-02155-CCA-R3-CD**

_____

A Shelby County jury convicted the defendant, Marterious O'Neal,[1] of especially aggravated kidnapping and aggravated robbery. Following a sentencing hearing, the trial court imposed an effective sentence of thirty years in confinement. On appeal, the defendant challenges the sufficiency of the evidence to support his convictions. The defendant also contends the trial court erred in sentencing him as a Range II offender. After reviewing the record and considering the applicable law, we affirm the defendant's convictions but remand for imposition of sentences as a Range I, standard offender.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed and Remanded**

J. ROSS DYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and TIMOTHY L. EASTER, JJ., joined.

Eric Mogy, Memphis, Tennessee, for the appellant, Marterious O'Neal.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Pam Stark and Leslie Byrd, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### *Facts and Procedural History*

On October 11, 2014, while working at Domino's Pizza, the victim, Steven Smith, delivered an order to 935 Isabelle St. The victim pulled into the driveway and approached

---

[1] We note that throughout the record the defendant is also referred to as "Marterius O'Neal."

the defendant and Antwon Young, who were waiting on the front porch.[2]  When the victim handed the defendant the receipt, the defendant complained about the price of the pizzas and told the victim that he no longer wanted the order.

As the victim backed out of the driveway, Mr. Young signaled for him to return and indicated they would pay for the pizzas.  Mr. Young took out his wallet, but the victim became uncomfortable as it appeared Mr. Young did not have any money.  The victim then noticed the defendant, who was standing near the house, was "clutching something inside of his [pants]."  The victim turned back toward Mr. Young, who pointed a handgun at the victim's torso and told the victim he "want[ed] it all."  As the victim pulled out his wallet, the defendant removed a handgun from his pants and approached the driver's side of the car.  The victim then handed his wallet and car keys to the defendant, while Mr. Young took the pizzas.

The defendant ordered the victim out of the vehicle and into the trunk.  The victim complied, and both the defendant and Mr. Young "slammed the trunk closed."  The victim, who still had his cell phone, began to call his boss at Domino's.  However, he realized his cell phone had connected to the vehicle's Bluetooth system and quickly ended the call.  After disconnecting his phone from Bluetooth, the victim called his boss and asked him to contact 911.

During the phone call, the victim realized the vehicle was moving.  When it stopped, the victim "knock[ed] down [the] back seats" and entered the vehicle's interior.  The victim then began searching for the perpetrators and encountered several witnesses who were able to describe both the get-away car, a gold Chevrolet Monte Carlo, and its license plate number.  The victim returned to the Domino's store and spoke with Officer Norman White of the Memphis Police Department ("MPD").  The victim described the perpetrators as African-American males in their late teens.  Specifically, the defendant was described as being the younger and more dark-skinned of the two and having "an abnormally large nose."  The victim also provided Officer White with the license plate number of the Monte Carlo.

The next day, Detective Jesus Perea was assigned to lead the investigation.  Detective Perea ran the license plate number given by the victim and discovered the Monte Carlo used in the robbery belonged to Melvin Wiggins.  Mr. Wiggins was brought in for questioning and informed Detective Perea that, on the day of the robbery, the defendant and another person had borrowed the car.  Detective Perea then prepared two photographic lineups, one including the defendant and one including Mr. Wiggins.  The victim was

---

[2] The defendant and Mr. Young were tried in a joint trial.  A third co-defendant, Melvin Wiggins, was tried separately.

unable to identify Mr. Wiggins but "immediately" identified the defendant as one of the men involved in the robbery.

Following his arrest, the defendant agreed to give a statement in which he admitted to participating in the robbery. However, he told Detective Perea that Mr. Wiggins, and not Mr. Young, was the gunman who initiated the robbery. According to the defendant, on the day of the robbery, he was hanging out with Mr. Wiggins, who was dating the defendant's cousin, when they decided to order a pizza. However, once the pizzas arrived, the defendant discovered he did not have enough money to pay for the order. As the victim was leaving with the pizzas, Mr. Wiggins flagged him down and offered to pay for the order. Instead, Mr. Wiggins pulled out a handgun and demanded that the victim relinquish his wallet and step out of the car. Because the victim got out of the car too fast, the defendant pulled out his gun but did not point it at anyone. Mr. Wiggins then told victim to get into the trunk.

The defendant told Detective Perea that he had wanted to pay for the pizzas and did not intend to rob the victim. However, because Mr. Wiggins "was speaking aggressive[ly] and telling [the defendant] what to do," the defendant "joined in and did whatever [Mr. Wiggins] told [him]." Although the defendant attempted to implicate Mr. Wiggins as the second gunman, Mr. Young was eventually developed as a suspect, and the victim identified him in a photographic lineup several months later.

At trial, Mr. Wiggins admitted to being an accomplice in the robbery and testified he had already been convicted for his role as the get-away driver. Mr. Wiggins, who knew both Mr. Young and the defendant, stated that the defendant was lying when he told Detective Perea that Mr. Wiggins was the gunman who initiated the robbery.

The defendant declined to present evidence. Following deliberations, the jury found the defendant guilty of especially aggravated kidnapping and aggravated robbery, and the trial court subsequently sentenced the defendant to an effective sentence of thirty years in confinement. This appeal followed.

## *Analysis*

On appeal, the defendant argues the evidence presented at trial was insufficient to support his convictions. The defendant also contends the trial court erred in sentencing him as a Range II offender. The State contends the evidence is sufficient but concedes the defendant was incorrectly sentenced as a Range II offender.

Initially, we note, although not addressed by the parties in their briefs, that the defendant's notice of appeal was untimely. The record reflects that the trial court sentenced

the defendant on July 30, 2019, and that the judgments of conviction were entered the same day. Trial counsel did not file the motion for new trial until September 11, 2019. *See* Tenn. R. Crim. P. 33(b); *State v. Bough*, 152 S.W.3d 453, 460 (Tenn. 2004). The trial court denied the motion on November 5, 2019, and the defendant's notice of appeal was filed on December 2, 2019. Because the defendant's late-filed motion for new trial did not toll the time for filing a notice of appeal, his notice of appeal was also untimely. *See* Tenn. R. App. P. 4(a); *State v. Davis*, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987). However, unlike the untimely filing of the motion for new trial, this Court has the discretion to waive the untimely filing of a notice of appeal. *See id.* Because the defendant raises only sufficiency and sentencing issues on appeal, we elect, in the interest of justice, to waive the untimely filing of the notice of appeal and review the issues on the merits.

## I.    Sufficiency

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted

defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

## A.      Aggravated Robbery

The defendant argues the evidence at trial is insufficient to support his conviction for aggravated robbery. Although the defendant does not dispute a robbery occurred, he argues the State failed to establish his identity as the perpetrator. Specifically, the defendant contends the victim's testimony was "too weak and uncertain" to corroborate the defendant's confession. The State contends the evidence was sufficient to support the defendant's conviction for aggravated robbery.

"The identity of the perpetrator is an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citing *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975)). The burden is on the State to prove the identity of the defendant as the perpetrator beyond a reasonable doubt. *State v. Cribbs*, 967 S.W.2d 773, 779 (Tenn. 1998). The identification of the defendant as the perpetrator is "a question of fact for the jury upon its consideration of all competent proof." *State v. Bell*, 512 S.W.3d 167, 198 (Tenn. 2015) (citing *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005)).

As charged in this case, "[r]obbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). An aggravated robbery is a robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." *Id.* § 39-13-402(a)(1).

Here, the evidence showed the defendant and Mr. Young were armed with handguns and stole the victim's wallet and car keys. The victim identified the defendant in a photographic lineup as one of the two men who had robbed him. At trial, the victim again positively identified the defendant as the man who robbed him and did not waver in his identification despite vigorous cross-examination by the defendant. Additionally, following his arrest, the defendant provided a statement to police in which he confessed to participating in the robbery. Although the defendant argues that the victim's testimony was "weak" and "uncertain" and that his statement to police was "inconsistent with [the State's] theory," the jury resolved any inconsistencies in testimony in favor of the State, and we will not second-guess the jury in the resolution of any conflicts in the proof. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). Accordingly, this evidence is sufficient to support the defendant's conviction, and the defendant is not entitled to relief on this issue.

## B.      Especially Aggravated Kidnapping

The defendant also argues that the State failed to prove the especially aggravated kidnapping was not incidental to the aggravated robbery because the purpose of the victim's confinement was to "ensure full control and possession of the victim's vehicle" during the robbery. Citing *State v. White*, 362 S.W.3d 559 (Tenn. 2012), the defendant essentially argues the evidence is insufficient to sustain his conviction because the State failed to prove the confinement or removal of the victim was greater than that necessary to commit the offense of aggravated robbery. The State contends the evidence is sufficient to sustain a separate conviction for aggravated robbery.

Especially aggravated kidnapping is a "false imprisonment . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonable believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-305(a)(1). False imprisonment is the knowing removal or confinement of another unlawfully so as to interfere substantially with the other's liberty. *Id.* § 39-13-302(a). "When jurors are called upon to determine whether the State has proven beyond a reasonable doubt the elements of kidnapping, aggravated kidnapping, or especially aggravated kidnapping, trial courts should specifically require a determination of whether the removal or confinement is, in essence, incidental to the accompanying felony or, in the alternative, is significant enough, standing alone, to support a conviction." *White*, 362 S.W.3d at 578. In determining whether there is "substantial interference," our Supreme Court provided several factors to consider, including, but not limited to: "whether the interference with the victim's liberty was inherent in the nature of the separate offense;" "whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;" "whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective;" and "whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense." *Id.* at 580-81.

Viewed in the light most favorable to the State, the evidence at trial showed that the defendant and Mr. Young brandished handguns and robbed the victim of his wallet and car keys. The defendant then ordered the victim into the trunk, and the defendant and Mr. Young closed the trunk and moved the car to the side of an abandoned house. While the confinement only lasted a few moments, the statutory elements of especially aggravated kidnapping do not require a finding that the defendant moved the victim any specific distance or restrained him for any particular length of time in order for the defendant's actions to substantially interfere with the victim's liberty. *See State v. Antwon Young*, No. W2019-00492-CCA-R3-CD, 2020 WL 1491377, at *4 (Tenn. Crim. App. Mar. 26, 2020), *perm. app. denied* (Tenn. Aug. 11, 2020). Moreover, the jury could have reasonably inferred that the purpose of forcing the victim into the trunk and moving the car to the side

of the house was to prevent him from summoning assistance or for the purpose of deterring any attempt to thwart the robbery. Accordingly, the removal or confinement of the victim was to a greater degree than that necessary to commit the offense of aggravated robbery, and the defendant is not entitled to relief on this issue.

## II.    Sentencing

The defendant argues the trial court erred in sentencing him as a Range II offender based on convictions which were not adjudicated until after the instant offenses were completed. The State concedes the case should be remanded for a new sentencing hearing to determine appropriate sentences as a Range I offender.

The present offenses were committed on October 11, 2014; however, the defendant did not go to trial until April 16, 2018. In 2017, the defendant was convicted of two counts of first-degree murder for an incident that occurred in 2014, a week prior to the instant offenses. At the sentencing hearing in the instant matter, the State sought to enhance the defendant's sentences based upon his two murder convictions from 2017. The trial court found that the defendant had previously been convicted of these two felonies, thereby classifying him as a Range II offender.

Our sentencing act defines a "multiple offender" as a defendant who has either "[a] minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes . . . or [o]ne (1) Class A prior felony conviction if the defendant's conviction offense is a Class A or B felony." Tenn. Code Ann. § 40-35-106(a)(1)-(2). A "prior conviction" is defined as a "conviction for an offense occurring prior to the commission of the offense for which the defendant is being sentenced." *Id.* § 40-35-107(b)(1). Furthermore, our Supreme Court has held that for purposes of imposing a sentencing range, "'prior conviction' means a conviction that has been adjudicated prior to the commission of the more recent offense for which sentence is to be imposed." *State v. Blouvett*, 904 S.W.2d 111, 113 (Tenn. 1995).

It is clear from the record that the defendant's two 2017 murder convictions, which the trial court used to classify the defendant as a Range II offender, were not prior convictions at the time the defendant committed the instant offenses. While the murders were committed prior to the commission of the offenses in the instant matter, they were not adjudicated until after the commission of the robbery and kidnapping in this matter. *See State v. Mark Robert Carter*, No. M2007-02706-CCA-R3-CD, 2009 WL 1349206, at *6 (Tenn. Crim. App. May 14, 2009), *perm. app. denied* (Tenn. Sept. 28, 2009) (holding the trial court erred in sentencing the defendant as a Range II offender based on convictions which had not been adjudicated at the time of the offenses in the instant matter). Therefore,

the defendant's sentence is reversed and the case is remanded to the trial court for imposition of Range I sentences.

## *Conclusion*

Based on the foregoing authorities and reasoning, the judgments of the trial court are affirmed. However, we conclude the trial court erred in sentencing the defendant as a Range II, multiple offender. We, therefore, remand the case to the trial court for imposition of Range I sentences.

_____
J. ROSS DYER, JUDGE